UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff,** v. LAMAR CHAVES THORNTON, **Defendant.** | CRIMINAL NO. 5:17-CR-26-KKC <br><br> **MEMORANDUM, OPINION and ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Thornton's Motion to Suppress (DE 247) and Motion to Dismiss (DE 265). For the reasons stated below, this Court **ORDERS** that both Motions are **DENIED**.

## I. BACKGROUND

This investigation began when Special Agent Jared Sullivan of the Drug Enforcement Administration (DEA) received information of a series of drug overdoses occurring in Jessamine County, Kentucky. (DE 75-4 at 6; DE 75-2 at 3.) Following this information, Sullivan was alerted to a suspected drug overdose that caused a car accident. The victim was resuscitated with Narcan and interviewed by DEA Task Force Officers. He stated that he had purchased heroin from Jeff Ruggerio in Garrard County, Kentucky. (DE 75-2 at 4-5.) Police obtained a search warrant for Ruggerio's residence and seized evidence consistent with drug trafficking. (DE 75-2 at 6.) Ruggerio was arrested and told officers that Jerrod Doolin was his heroin supplier. (DE 75-2 at 6-7.)

Ruggerio then permitted police to record a conversation in which Doolin agreed to supply Ruggerio with heroin. Police pursued Doolin, pulling over his vehicle. Doolin was detained,

1

mirandized, and police located fifty grams of heroin in his trunk. Doolin agreed to cooperate with the investigation. (DE 75-2 at 7.)

Officers then interviewed Doolin, who told them his supplier was an individual named "Dro." Later in the same interview, Doolin informed officers that his supplier's name was actually "Juice," but that everything he had said about Dro applied to Juice. (DE 75 at 19.) Doolin advised officers that he had been obtaining heroin from Juice for approximately 6 months and that Juice was from Detroit, Michigan. (DE 75-2 at 7.) Doolin's history with Juice was detailed by their phone communications. With Doolin's cooperation, officers were able to place consensually recorded calls to Juice's number, which belonged to Lamar Thornton. During these phone calls, Thornton made a series of statements to police consistent with drug trafficking. Officers were able to confirm Thornton's identity when Doolin identified him in a photo lineup. (DE 75-2 at 6-7.)

U.S. Magistrate Judge Edward Atkins authorized a GPS location information for Thornton's phone based on information revealed in their investigation, including several statements taken from Doolin's DEA interview. (DE 75-2 at 9.) Agents were able to pinpoint Thornton's home address in Detroit, Michigan and began surveilling his residence. (DE 75-2 at 10.)

Officers continued to collect evidence against Thornton and applied for a search warrant for his home. (DE 75-2 at 15-16.) In the affidavit used to support the warrant, agents detailed information provided by Doolin, conversations between Thornton and Doolin, information collected from the GPS location tracker, and information gathered throughout surveillance of his activities. U.S. Magistrate Judge Stafford of the Eastern District of Michigan agreed probable cause existed, and a search warrant was issued for his residence. The search warrant was executed, and officers located 200 grams of carfentanyl in his home. Thornton was arrested and brought to Lexington, Kentucky.

Thornton was indicted in the Eastern District of Kentucky on February 9, 2017, along with Ruggiero and Doolin. (DE 9). A superseding indictment was returned on April 6, 2017, adding Thomas Lehmann as a co-conspirator (DE 29), and a second superseding indictment was returned on September 7, 2017, adding Darmon Shaw as a co-conspirator (DE 65). Thornton is currently charged with one count of conspiring with others to knowingly and intentionally distribute a mixture or substance containing a detectable amount of heroin and a detectable amount of carfentanyl in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. (DE 65).

Thornton presently has two motions before this Court, a Motion to Suppress and a Motion to Dismiss. Thornton's Motion to Suppress asks this Court—for the second time—to suppress evidence obtained during the search of his residence. (DE 247.) He also requests a Franks hearing, arguing that the affirmation which supported the GPS tracking order (the "affirmation") and the affidavit which supported the search warrant (the "affidavit") contained material omissions and false statements. (DE 247 at 1.); *see Franks v. Delaware*, 438 U.S. 154 (1978). Thornton's Motion to Dismiss alleges violations of the Speedy Trial Act and asks this Court to dismiss his case. (DE 265 at 2.)

## II. ANALYSIS

### A. Motion to Suppress. (DE 247).

Thornton's present Motion to Suppress (DE 247) contains substantially the same allegations as one of his previous motions to suppress (DE 75). There are two inconsequential differences. In his prior motion, Thornton asserted that there were material omissions in both the affirmation, in support of the GPS tracking order, and affidavit, in support of the search warrant. (DE 75 at 17-22.) In the present Motion (DE 247), Thornton asserts that the affidavit and affirmation additionally contained false statements. (DE 247 at 10-15.) In his prior motion, Thornton also asserted that the good faith exception was inapplicable and

3

argued that the warrant was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable" because the affidavit did not contain a minimally sufficient nexus between the illegal activity and the place to be searched. (DE 75 at 14-15.) In the present Motion, Thornton makes the same argument, but instead reasons that the affidavit and affirmation contain a "knowing and reckless falsity." (DE 247 at 17-18.) Because both motions raise the same issues and seek the same relief, this Court is construing the present Motion to Suppress as a Motion to Reconsider.

Motions to reconsider are generally evaluated under the same standards applicable to civil motions to alter or amend a judgment. *See* Fed. R. Civ. P. 59(e); *United States v. Reynolds*, No. 3:08-CR-143, 2018 WL 1950433, at *1 (E.D. Tenn. Feb. 24, 2018). Accordingly, motions to reconsider are granted only if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in the controlling law; or (4) a need to prevent manifest injustice." *ACLU of Ky. v. McCreary Cty.*, 607 F.3d 438, 450 (6th Cir. 2009). Motions to reconsider are not "vehicle[s] to reargue a case; [they] may not be used to raise arguments that could have been raised on initial consideration." *See In re G.A.D., Inc.*, 340 F.3d 331, 334 (6th Cir. 2003); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 561, 572 (6th Cir. 2013). Further, such motions do not give an unhappy litigant an opportunity to relitigate matters already determined by the Court. *Davidson v. Roadway Express, Inc.*, 562 F. Supp.2d 971, 985 (N.D. Ohio 2008). Instead, motions to reconsider "must either clearly establish a manifest error of law or must present newly discovered evidence." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007). Thornton's Motion does neither.

Thornton has compiled a list of eight statements used in either the affidavit or affirmation which he now alleges are false and misleading. (DE 245 at 10-15.) Thornton also argues that

the good faith exception does not apply because the affidavit and affirmation contained "knowing and reckless falsities." (DE 247 at 17-18.) His central assertion is that statements, originating from co-defendant Doolin, were inconsistent, unreliable, and therefore could not be used in the affidavit or affirmation. Thornton's arguments fail because he has not established a manifest error of law or presented newly discovered evidence. A manifest error of law is "[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law." Black's Law Dictionary (10th ed. 2014). It is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). In his present motion, Thornton cites absolutely no precedent contravening the law cited in the Court's order denying his prior motion to suppress. (*See* DE 247.) Furthermore, Thornton is seeking to challenge the reliability of Doolin—an issue already litigated and decided by this Court. (DE 110 at 11.) This Court explicitly addressed Doolin's reliability due to inconsistencies in his statements and stated there was sufficient indicia of credibility contained within the affirmation and substantial corroborating facts included in the affidavit to establish credibility. (DE 110 at 11-12.) Accordingly, Thornton's Motion does not demonstrate any disregard, misapplication, or failure to recognize controlling precedent and instead seeks to relitigate matters already decided by this Court. Thornton also does not present any newly discovered evidence. In fact, his entire argument relies exclusively on the very same evidence—statements in the affidavit, affirmation, and Doolin's DEA transcript—used in his prior motion to suppress. Here, however, Thornton claims that the affidavit contains false statements in addition to material omissions previously raised. Simply put, Thornton's present Motion relies on the same evidence to make a new argument, one which could have been raised before. Because Thornton's Motion contains no claims of manifest error and relies on no newly discovered evidence, it must be denied.

Thornton also asserts that Doolin's statements were taken in contravention of his rights under the Constitution. (DE 247 at 17.) The above analysis also applies here, and his assertion may not be raised in this Motion because it could have been raised upon initial consideration. But even so, Thornton has no standing to make this claim because generally a defendant does not have standing to challenge the admission of evidence for violations of another person's constitutional rights. *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 455 (6th Cir. 2017).

Finally, Thornton's entire argument regarding the good faith exception is misplaced. This Court found that the search warrant was based on probable cause. (DE 110 at 6-10.) Courts only need to address the issue of the good faith exception when a search warrant is issued without probable cause. *See Illinois v. Krull*, 480 U.S. 340, 347 (1987). Accordingly, his argument regarding the good faith exception is inapposite.

Thornton has provided this Court with absolutely no grounds to reconsider our denial of his prior motion to suppress. His present Motion contains no claims of manifest error, relies on no newly discovered evidence, and only contains inapplicable arguments that may not be raised because they could have been raised in his initial motion. Accordingly, Thornton's Motion (DE 247) must be denied.

**B. Motion to Dismiss. (DE 265).**

Thornton has also filed a Motion to Dismiss asking the Court to dismiss his case based on Speedy Trial Act violations. The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI. The United States Supreme Court has developed a four-factor test used to evaluate Sixth Amendment speedy trial claims. The Court must evaluate a claim based upon (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No one factor is determinative, and instead, all factors are

6

considered collectively with any other circumstances that may be relevant. *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2013).

### 1. Length of Delay.

In evaluating an alleged speedy trial violation, the first-factor—length of delay—is a threshold requirement. *Barker*, 407 U.S. at 530. When a delay extends beyond one year, then it is considered presumptively prejudicial, triggering the examination of the other factors. *United States v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006). In the present case, more than one year has passed since Thornton's original indictment.[1] Accordingly, we must proceed to the other factors.

### 2. Reason for Delay.

The second factor—the reason for delay—requires judicial assessment of the blame attributable to each party. "Government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government." *United States v. Schreane*, 331 F.3d 548, 553-54 (6th Cir. 2003). Negligence and court overcrowding should also be considered. *Id*. Further, "continuances and other motions filed by the defendant do not weigh against the government." *United States v. Black*, 830 F.3d 1099, 1113 (10th Cir. 2016).

To be meticulous in its assessment of blameworthiness, this Court will review each delay in this case. Thornton was indicted on February 9, 2017, and his jury trial was scheduled for April 24, 2017. (DE 9). On March 31, 2017, Thornton moved to continue trial so that he would have adequate time to review large amounts of discovery and prepare for trial. (DE 27). This Court granted his motion and set the trial for June 16, 2017. (DE 34).

---

[1] Thornton was indicted on February 9, 2017, and his trial is currently scheduled for February 25, 2019. (DE 9 and 275).

7

A month before trial, on May 12, 2017, counsel filed a motion for a competency evaluation of Thornton. (DE 42). An examination and evaluation ensued. On August 15, 2017, this Court held a hearing at which Thornton was deemed competent, and the Court set the jury trial for October 16, 2017. (DE 55).

Thornton then filed a motion to suppress. (DE 75). While that motion was pending, the Grand Jury returned a second superseding indictment, which included an additional charge against Thornton's co-defendants. (DE 80-83). Consequently, the co-defendants filed motions to continue requesting a continuance of at least forty-five days citing their need for more time to review discovery, retain experts, and prepare their defense. (DE 86 and 87). Following this series of motions, the Court then set Thornton's suppression hearing for October 20, 2017 (DE 91), granted the continuance motions, and reset the jury trial for January 22, 2018 (DE 96).

On December 18, 2017, Thornton filed a motion to sever. (DE 138). On February 2, 2018, the Court held a hearing and set aside the January 22, 2018 trial date. (DE 140). Thornton's motion to sever implicated complicated *Bruton* issues requiring the review and redaction of lengthy co-defendant interviews. (DE 138 and 146.) The defense, government, and Court all agreed that the case was complex—there were two superseding indictments, five defendants, and an anticipated two-week trial. (DE 146.) All parties agreed that there were outstanding issues which needed time to be addressed—specifically, Thornton's severance request. (DE 147.) The Court set the earliest possible date, considering the scheduling conflicts of the defendants' counsel, and set the jury trial for August 6, 2018. (DE 147).

Thornton filed yet another motion to suppress on June 27, 2018. (DE 168). This Court scheduled Thornton's suppression and severance hearing for July 27, 2018 (DE 173). Counsel for Doolin requested a short continuance of this hearing due to being out of town on July 27,

2018. (DE 181). Doolin's counsel felt it incumbent to be present at this hearing because there would be evidence presented germane to Doolin's defense. (DE 181 at 1.) This Court granted a short continuance, the hearing was reset for August 9, 2018, and the Court set aside the August 6, 2018 trial date. (DE 182).

At the hearing on Thornton's motion to suppress and motion to sever, the parties still anticipated needing two-weeks to try the case. The Court first suggested two weeks in October 2018, but counsel for Doolin had another trial scheduled at the same time. The next available date for a two-week trial was February 4, 2019. The parties agreed, and the Court set the new trial date accordingly. (DE 210).

On December 26, 2018, Doolin requested a continuance for the purpose of engaging a toxicologist to review the medical records of an alleged victim in this case. (DE 257). The Court granted his motion, and the February 4, 2019 trial date was set aside. (DE 268). An ex parte motion hearing was held on January 9, 2019 where Thornton renewed his motion to sever. (DE 275). This Court granted his motion, and a new trial date of February 25, 2019 was set for Thornton. (DE 275).

The vast majority of delays in this case were due in part, if not entirely, to motions filed by Thornton. (*See* DE 27, 42, 75, 138, and 168). Only two delays were attributable to Thornton's co-defendants—the first resulting from a trial scheduling conflict (*See* DE 182 and 210); and the second due to Doolin's need to engage a toxicologist (*See* DE 257). Notably, the second delay occurred after this Motion to Dismiss was filed and only caused a delay of three-weeks. (*See* DE 268 and 275). Moreover, no delays in this case are solely attributable to the United States. This Court is also cognizant that some delay was caused by the need to schedule a two-week long trial. (*See* DE 147 and 210). However, it is readily apparent that the overwhelming majority of delays in this case are attributable to Thornton.

9

Thornton argues in his Motion to Dismiss that continuance motions filed by co-defendants, lengthy delays caused by the government, lengthy delays caused by the Court, his counsel's failure to object to continuances, his counsel's filing of continuances on his behalf, and the court's failure in certain stages to document excluded time under the Speedy Trial Act all require the Court to dismiss his case. This Court finds otherwise. First, as explained above, only two delays in this case are not attributable to Thornton. Second, the only delay even remotely attributable to the United States involved its need for more time to address complicated issues stemming from Thornton's Motion to Sever. Third, his defense counsel's filing of continuances and failure to object to co-defendant continuances are not relevant to this blameworthiness analysis. Even if they were, Thornton does not identify what continuance filed on his behalf he did not agree with and does not identify a motion to continue which his counsel could have objected to.[2] Finally, Thornton's assertion that this Court has not documented excluded time under the Speedy Trial Act is entirely untrue. Each time the trial date has been adjusted, this Court has fully documented and specifically excluded time under the Speedy Trial Act. (DE 34, 46, 96, 140, 146, and 210). Thornton does not point to any bad faith, harassment, or attempts to seek tactical advantage by the United States. Moreover, while this Court does recognize that negligence and court overcrowding delays must be considered and weighed against the government, this Court finds that such delays in this case are not significant. Accordingly, since the bulk of delays in this case are directly attributable to motions filed by Thornton, this Court finds that he is the more blameworthy party.

---

[2] Thornton is seemingly referring to a scheduling conflict that occurred at the August 9, 2018 hearing. Counsel for Doolin did not motion to continue trial. Instead, Doolin's counsel had another trial scheduled on the same date the Court first suggested. The Court scheduled the trial on the next available date. (DE 210.)

### 3. Assertion of Right Under the Speedy Trial Act.

The third factor—assertion of right—considers how promptly, forcefully, and diligently the defendant asserts his right to a speedy trial. *See, e.g., Barker*, 407 U.S. at 530; *United States v. Loud Hawk*, 474 U.S. 302, 314-15 (1986); *United States v. Young*, 657 F.3d 408, 417 (6th Cir. 2011). This factor is considered under the totality of the circumstances. *See id*. Courts will consider the defendant's filing of motions, requests for new counsel, and lengthy delays in asserting rights under the Speedy Trial Act. *United States v. Williams*, 753 F.3d 626, 633-34 (6th Cir. 2014). Accordingly, this Court must determine the point at which Thornton asserted his rights under the Speedy Trial Act and examine the extent to which he asserted those rights.

Thornton first referenced his rights under the Speedy Trial Act to this Court by way of letter on October 19, 2018. (DE 236). On October 29, 2018, this Court received another letter, which contained Thornton's first explicit articulation of rights under the Speedy Trial Act. (DE 239). Accordingly, Thornton's first assertion of his right to a speedy trial was not communicated to this Court until over twenty-one months after his original indictment. Further, as discussed above, Thornton's filing of various motions triggered most of the delays present in this case. While this Court recognizes that Thornton did eventually assert his rights to a speedy trial, we question the sincerity of his assertion considering that he was the primary reason for his own delays and he waited over twenty-one months to articulate his rights to this Court. *See Williams*,753 F.3d at 633-34.

### 4. Prejudice by the Delay.

The final factor—prejudice to the defendant—considers the interests which the speedy trial right was designed to protect. *Barker*, 407 U.S. at 532. Such interests include preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that defense will be impaired. *Id*. Length of delay is also

considered. *Doggett v. United States*, 505 U.S. 647, 655-56 (1992). In addition, a defendant generally has to specify what prejudice he has suffered as a result of the delay. *See, e.g., United States v. Zabawa*, 719 F.3d 555, 563 (6th Cir. 2013) ("mere loss of memory is an insufficient reason to establish prejudice."); *United States v. Young*, 657 F.3d 408, 418 (6th Cir. 2011); *United States v. Brown*, 498 F.3d 830, 838 (6th Cir. 2006) ("[the defendant] does not state what testimony any missing witnesses could have provided, which witnesses' memories were affected, or how his own memory problems affected his defense. Accordingly, without a further showing, it is impossible for this court to discern prejudice from [the defendant's vague and unsupported allegations."); *Robinson*, 455 F.3d at 606.

In his Motion to Dismiss, Thornton does not claim oppressive pretrial incarceration, anxiety and concern, or assert that his defense has been impaired. Instead, he complains that since his incarceration in January 2017, three of his co-defendant's have taken pleas and that "maybe the outcome would have been different" if his trial began "on time." (DE 265 at 4.) He seems to be arguing that if the trial started when originally scheduled, maybe his co-defendants would not have agreed to testify or provide evidence against him. However, two of these three co-defendants have been cooperative with the government since the inception of this case. (*See* DE 293 at 12.) He also complains that the government failed to timely respond to his motions but does not indicate which motions he is referring to. (DE 265 at 5.) Interestingly, Thornton also claims prejudice for lack of severance and speedy trial violations from the resulting delay, even though it was his own motion that caused the delay. (DE 265 at 5.) Finally, he claims prejudice for his attorney's "failure to object to the continuence [*sic*] asked for by Doolin's attorney in court at the severance hearing on 8-9-18." (DE 265 at 5.) But this misconstrues what occurred at the suppression and severance hearing on August 9, 2018 because there was no continuance "asked for by Doolin's attorney." Instead, the Court

suggested two weeks in October 2018 and Doolin's attorney had another trial scheduled for the same time. The next available date of this Court to schedule a two-week trial was the week beginning February 4, 2019.

Thornton has not articulated harm caused by the delay of his case. "When a defendant is unable to articulate the harm caused by delay, the reason for the delay (factor 2) will be used to determine whether the defendant was presumptively prejudiced." *Williams*, 753 F.3d at 634 (citing *United States v. Mundt*, 29 F.3d 233, 236 (6th Cir. 1994)). Looking to the reason for the delay, this Court explained above that Thornton is the primary reason for the delay in his case. Further, there is no evidence that the government acted in bad faith, maliciously, or negligently. Based on the foregoing, the Court finds that Thornton has not been prejudiced by the delays in his case.

Despite the length of delay in this case, other factors weigh heavily against finding a Speedy Trial Act violation. As explained above, Thornton has been the primary reason for his own delay, he has not been diligent in asserting his rights, and the Court fails to see how the delay has caused him prejudice. Consequently, Thornton's Motion to Dismiss (DE 265) premised on alleged violations of the Speedy Trial Act is denied.

## III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Thornton's Motion to Suppress (DE 247) and Motion to Dismiss (DE 265) are **DENIED**.

Dated February 27, 2019.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY